1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8 AT TACOMA

9  COLUMBIA COMMUNITY CREDIT      )
UNION, also known as COLUMBIA    )
10 CREDIT UNION, a Washington nonprofit  )   No. 09-5290 RJB
corporation,                    )
11                              )   ORDER DENYING PLAINTIFF'S
Plaintiff,    )   MOTION FOR PARTIAL SUMMARY
12                              )   JUDGMENT
v.                        )
13                              )
CHICAGO TITLE INSURANCE         )
14 COMPANY, a Missouri corporation,  )
                               )
15                  Defendants.  )

16

17          This matter comes before the Court on Plaintiff's Motion for Partial Summary

18 Judgment (Dkt. 36).  The Court has considered the pleadings filed in support of and in

19 opposition to the motion and the remainder of the file herein.

20

21                  **I. RELEVANT FACTS AND PROCEDURAL HISTORY:**

22          The dispute at issue in this case arises out of two loans Plaintiff Columbia Community

23 Credit Union made to a developer, Pacific Links, LLC ("Pacific Links") for the construction

24 of condominiums on property, named Two Creeks, in Camas, Washington. Dkt. 37; Dkt. 46.

25 In November 2004, Plaintiff loaned Pacific Links $900,000 to purchase the property. Dkt. 46.

26

In December 2005, Plaintiff extended a loan in the amount of $2,799,337 to Pacific Links for development of the property. Dkt. 37. This development loan paid off, or replaced, the original loan in the amount of $900,000 to purchase the property. Dkt. 46. Then in January 2006, Plaintiff extended another loan to Pacific Links in the amount of $13,090,593 for construction on the property. Dkt. 37. Plaintiff's interest was secured by deeds of trust on the project. Dkt. 37. The sole members of Pacific Links, Rick Bowler and Marilee Thompson, executed personal guarantees to Plaintiff for the loan amounts. Dkt. 46.

Plaintiff purchased from Defendant Chicago Title Insurance Company two ATLA Lender's Policies (Policy Nos. K148304 and K148657) for the development and construction loans; Defendant's policies offered extended title coverage "to assure [Plaintiff] of a first priority lien position." Dkt. 37 at 2.

On February 7, 2007, the general contractor on the project, R&H Residential Construction (R&H), recorded a $1,759,980 lien on the property. Dkt. 37 at 2; Dkt. 48. In this lien, R&H claimed that it had priority over the Plaintiff as of October 10, 2005, the day it commenced work on the property. Dkt. 48. R&H had begun work on the property prior to the advancement of the development or construction loan, but after the original loan to purchase the property. Dkt. 48. Plaintiff admits that it was aware R&H had begun work on the property before it advanced the development or construction loans. Dkt. 48.

Plaintiff received notice of this lien on February 12, 2007, when it got a letter from R&H, which included the construction lien notice. Dkt. 48. At this time, Plaintiff did not notify Defendant of the lien. Plaintiff states that it did hire an attorney, Laura Walker, in March 2007 to seek advice about construction liens. Dkt. 48.

On April 23, 2007, George Schmid & Sons (George Schmid), a subcontractor, recorded a lien for $419,657.23. Dkt. 37. Both R&H and George Schmid asserted that their liens had priority over the two insured deeds of trust. Dkt. 37.

On June 12, 2007, R&H filed suit in Clark County Superior Court, to foreclose its lien; R&H was joined by George Schmid and other subcontractors. Dkt. 37 at 2. In that action, R&H, Schmid, and the other foreclosing subcontractors alleged that their liens had priority over the liens of Plaintiff. Dkt. 37 at 2. Plaintiff was represented by its own counsel and had not notified Defendant of the lien claims or the Clark County Superior Court case. Dkt. 37. Plaintiff cross claimed against Pacific Links for foreclosure of its deeds of trust and filed a third party complaint for judgment against Mr. Bowler and Ms. Thompson, the guarantors of the loans. Dkt. 37 at 2.

In June of 2008, R&H obtained summary judgment in its favor, and against Plaintiff, on the priority of its lien. Dkt. 37 at 2. Plaintiff then paid R&H's liens in the amount of $1,838,242.64 and other lien claimants in the amount of $192,493.80. Dkt. 37 at 2. Plaintiff did not pay George Schmid's lien claim and that lien foreclosure action is still pending in Clark County Superior Court. Dkt. 37 at 2.

Supplemental judgments have been entered in Plaintiff's favor, against Pacific Links and the guarantors, for amounts paid to satisfy the lien claims. Dkt. 37. The judgments entered against Pacific Links exceed $20,000,000. Dkt. 37. At a judicial foreclosure sale of the property on September 19, 2008, Plaintiff purchased the property with a credit bid of $11,790,000, leaving Plaintiff with a substantial deficiency judgment, over $10,000,000, against Pacific Links and the guarantors. Dkt. 37.

Plaintiff states that it "attempted for months to serve the guarantors [Mr. Bowler and Ms. Thompson] with orders to appear for supplement proceedings, finally having to engage the Clark County Sheriff's Department to successfully obtain service of process on the guarantors." Dkt. 37 at 3. After service, Mr. Bowler did not appear for his judgment-debtor examination scheduled to take place in November 2009. Dkt. 37 at 3. Then, Plaintiff obtained an Order of Contempt and Issuance of a Bench Warrant against Mr. Bowler. Dkt. 37 at 3. Mr. Bowler was taken into custody on November 20, 2009. Dkt. 37 at 3. Once Mr. Bowler was in custody, Plaintiff's counsel was able to conduct a judgment-debtor's examination but did not receive requested documents on guarantor's financial situation and assets. Dkt. 37 at 3. Similarly, Ms. Thompson failed to appear for her judgment-debtor examination. Dkt. 37 at 3. But, Plaintiff's counsel was later able to question Ms. Thompson. Dkt. 37 at 3. Plaintiff states that "neither judgment-debtor exam revealed the existence of assets sufficient to satisfy anywhere near the amount of Columbia's judgment." Dkt. 37 at 3.

Meanwhile, on August 6, 3008, Plaintiff tendered the satisfied lien claim to Defendant for payment and the Schmid lien foreclosure action for defense and potential indemnity. Dkt. 37 at 3. Plaintiff demanded payment of $2,030,744 for reimbursement of amounts paid on the construction lien claims that took priority over the Plaintiff's lien on the property. Dkt. 37 at 2. Plaintiff also requested that the Defendant reimburse it in the amount of $60,000 for attorney's fees and costs incurred through July 31, 2008, in connection with the foreclosure action. Dkt. 37.

In March of 2009, Defendant accepted defense of the Schmid lien foreclosure action, with a full reservation of rights, and appointed counsel to defend Plaintiff in the Schmid

action. Dkt. 37 at 3. As of the date of this order, Defendant has not paid the amounts requested by Plaintiff. Dkt. 37 at 3.

On April 22, 2009, Plaintiff filed this case in Clark County Superior Court. Dkt. 1. In its Complaint, Plaintiff alleges Breach of Contract and Declaratory Relief and Damages under the Insurance Fair Conduct Act. Dkt. 1. On May 19, 2009, Defendant removed this case to federal court, on the basis of diversity jurisdiction, 28 U.S.C. § 1441. Dkt. 1. On June 25, 2009, Defendant filed an answer, asserting, among other "Affirmative Defenses" that Defendant "acted in good faith, and conducted a reasonable coverage investigation." Dkt. 4 at 5. On December 4, 2009, Plaintiff filed a Motion for Leave to File Amended Complaint (Dkt. 19) requesting that the Court allow it to file an amended complaint in order to clarify its second claim for relief under the Insurance Fair Conduct Act, Chapter 48.30 RCW, and to add claims of bad faith and a violation of the Washington Consumer Protection Act. Dkt. 19. On January 21, 2010, the Court granted Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 19). Dkt. 44. Plaintiff filed an amended complaint on January 29, 2010 alleging add these news claims. Dkt. 54.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT:

On January 5, 2010, Plaintiff filed a Motion for Partial Summary Judgment (Dkt. 36). In its motion, Plaintiff requests that this Court enter partial summary judgment on the following claims:

> (1) "A declaration of coverage to the extent of $2,030,736.44 for sums paid to discharge liens on the Property, plus prejudgment interest and attorney fees in an amount to be determined";
> (2) "A declaration that CTIC's asserted defenses fail as a matter of law"; and

ORDER Page 5

(3) "Judgment in the amount of $2,030,736.44 for sums paid to discharge liens on the Property, plus prejudgment interest and attorney fees in an amount to be determined."

Dkt. 36 at 3.

Defendant filed a Response to Plaintiff's Motion for Partial Summary Judgment on January 25, 2010. Dkt. 45. Defendant argues that summary judgment should not be granted on these issues because Defendant has been prejudiced by Plaintiff's breaches and it is entitled to present its case to the jury. Dkt. 45.

On January 29, 2010, Plaintiff filed a Reply in Support of its Motion for Partial Summary Judgment. Dkt. 52. Plaintiff contends that Defendant's assertion that it was prejudiced fails as a matter of law, because Defendant did not offer enough evidence to show that late tender had a material effect on its ability to bring a defense. Dkt. 52.

### III. ANALYSIS:

Under the *Erie* doctrine, this Court, when exercising jurisdiction on the basis of diversity, applies federal procedural law and state substantive law. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 748 (1980).

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 586 (1986) (non-moving party must present specific, significant

probative evidence, not simply "some metaphysical doubt."). See also Fed.R.Civ.P. 56(e).

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec.*

*Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987)

The determination of the existence of a material fact is often a close question. The

court must consider the substantive evidentiary burden that the nonmoving party must meet at

trial – e.g., a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254,

*T.W. Elect. Service Inc.,* 809 F.2d at 630. The court must resolve any factual issues of

controversy in favor of the nonmoving party only when the facts specifically attested by that

party contradict facts specifically attested by the moving party. The nonmoving party may

not merely state that it will discredit the moving party's evidence at trial, in the hopes that

evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.,* 809 F.2d at

630 (relying on Anderson, supra). Conclusory, non specific statements in affidavits are not

sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*,

497 U.S. 871, 888-89 (1990).

A. Coverage under the Policies:

Plaintiff argues that it is entitled to coverage under Insuring Provision 7 of the

Policies. Dkt. 36. Plaintiff contends that it is undisputed that

> "(1) [Plaintiff] is insured under the Policies; (2) the Superior Court in the
> Foreclosure Action ruled against [Plaintiff] and in favor of R&H on
> priority of its mechanic's lien over the lien of [Plaintiff]; (3) [Plaintiff]
> paid R&H the amount of $1,838,242.64 in satisfaction of its lien claim and
> three other subcontractors the amount of $192,493.80 in satisfaction of

their lien claims on the Property; and (4) the amount of coverage available under the Policies far exceeds the amount Columbia paid to R&H and the three subcontractors; and (5) [Defendant] has not paid [Plaintiff] anything or offered to pay [Plaintiff] anything in connection with the Satisfied Lien Claim."

Dkt. 36 at 6.

It appears that Defendant does not dispute these facts, but rather Defendant argues that Plaintiff breached the insurance contract and suffered prejudice as a result of Plaintiff's breach. Dkt. 45. Defendant maintains that Plaintiff breached "no fewer than five provisions in the Policies." Dkt. 45. Specifically, these breaches include (1) Defendant's right to select and control the defense of any matter arising out of a potentially covered claim," (2) Plaintiff's failure to provide Defendant "with prompt notice of any claim (or potential claim," (3) Plaintiff's preclusion "from entering into any settlement without [Defendant's] written consent," and (4) Defendant's right "to appeal any adverse decision." Dkt. 45.

The issue in this motion for partial summary judgment is not whether Plaintiff breached the contract, but whether Defendant suffered prejudice as a result of these breaches. Dkt. 45. Defendant contends it suffered identifiable and material prejudice and that, for this reason, Plaintiff's motion for partial summary judgment should be denied because "[a] jury could easily conclude that [Plaintiff's] multiple and egregious breaches of the contract materially prejudiced [Defendant] in specific and identifiable ways." Dkt. 45.

### B. Tender of the Claim:

The Policies state that:

"The insured shall notify the [Defendant] in writing (i) in case of any litigation…, (ii) in case knowledge shall come to an insured hereunder any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss

ORDER Page 8

or damage for which the [Defendant] may be liable of by virtue of this policy."

Dkt. 37-2 at 3; Dkt. 37-3 at 3.

Defendant contends in its Response that Plaintiff breached the Policies by not tendering its claim on or before February 12, 2007. Dkt. 45. On that day, Defendant received notice of R&H's lien on the property. Dkt. 48. The claim of lien stated that R&H began work on October 5, 2005. Dkt. 48. Plaintiff did not notify Defendant of the claim until August 6, 2008. Dkt. 37 at 2. Here, issues are of fact are present as to when Plaintiff should have tendered the claim to Defendant and whether the Defendant suffered prejudice as a result of Plaintiff's late tender; therefore, summary judgment on this issue should not be granted.

C. Standard of Proof as to Prejudice under the Policies and Washington Law:

Plaintiff asserts that Defendant's contention that it suffered prejudice as a matter of law because of Plaintiff's "post-judgment tender" is contrary to the Policies as well as Washington law. Dkt. 36 at 7.

First, Plaintiff asserts that the language of the Policies is clear and Defendant must establish the fact that it was prejudiced as well as the extent of that prejudice. Dkt. 36. The Policies state that

"If prompt notice shall not be given to [Defendant], then as to the insured all liability of [Defendant] shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify [Defendant] shall in no case prejudice the rights of any insured under this policy unless [Defendant] shall be prejudiced by the failure and then only to the extent of the prejudice."

Dkt. 37.

ORDER Page 9

The Policies similarly state that "[i]f [Defendant] is prejudiced by the failure of the insured to furnish the required cooperation, [Defendant's] obligation to the insured under the policy shall terminate * * *." Dkt. 37.

From this policy language, Plaintiff argues that Defendant "may not avoid its obligations under the Policies as a result of late tender *unless* it has been prejudiced, and even then, it may avoid such obligations *only to the extent of the prejudice* proven." Dkt. 36. Defendant does not dispute this; but argues that Washington common law has modified the plain language of the contract. *See* Defendant's Reply in Support of Motion for Certification to Washington Supreme Court (Dkt. 42).

Second, Plaintiff contends that Defendant's assertion that it was prejudiced as a matter of law fails because tender after judgment is contrary to Washington law. With respect to the Washington law on tender after judgment, this Court recognized in its Order Denying Defendant's Motion for Certification of Questions to the Washington Supreme Court (Dkt. 49) that the insurer must show that it suffered an "identifiable and material detrimental effect on the ability to defend its interest" whether notice is given before or after judgment. *Mutual of Enumclaw*, 164 Wn.2d 411, 430 (2008) (the court stated that another case "stands for the proposition that even where litigation has been completed, there are circumstances in which this court will not find prejudice as a matter of law.")

The court, in *Mutual of Enumclaw*, stated that "even where an insured breaches a 'prompt notice' provision of an insurance policy, the insurer is not relieved of its duties under the insurance contract unless it can show that the late notice caused it actual and substantial prejudice." 164 Wn.2d at 426, *citing Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 427 (1999). The court also acknowledged that whether the insurer is prejudiced by late notice is a

ORDER Page 10

question of fact and will rarely be decided as a matter of law. *Mutual of Enumclaw*, 164 Wn.2d at 427, *citing Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 228 (1998).

In *Mutual of Enumclaw*, the court held that "in order to show prejudice, the insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests." 164 Wn.2d at 430. The court clarified this holding by stating that "[i]f the insurer claims that its own counsel would have defended differently, it must show that its participation would have materially affected the outcome, either as to liability or the amount of damages. *Id.* In *Mutual of Enumclaw*, the court determined that the insurer, which sought partial summary judgment, was not prejudiced as a matter of law because it had "not shown how the delay specifically deprived it of the ability to put forth defenses to coverage or to contest the value of damages." *Id*. at 431. The court did state that the insurer may be able to successfully prove prejudice still at trial but partial summary judgment was inappropriate because it had not proven prejudice as a matter of law. *Id*.

In order for the moving party to succeed on a summary judgment motion, it must show that there is no genuine dispute as to material fact. In order for an insurer to succeed on a prejudice defense at trial due to late notice, the insurer must show that it suffered an "identifiable and material detrimental effect on the ability to defend its interest." *Mutual of Enumclaw*, 164 Wn.2d at 430. However, to survive a summary judgment motion as to a defense of prejudice, the insurer must only show that there are disputed facts on this issue; the defendant does not have to affirmatively prove that is suffered prejudice to survive a summary judgment motion.

//

ORDER Page 11

## D. Defendant's Subrogation Rights:

Defendant asserts that it has been prejudiced by Plaintiff's late tender because it lost its right to exercise subrogation. Dkt. 45. Defendant contends that under the Policies it had broad subrogation rights; specifically, that Defendant's subrogation rights extended to "non-insured obligators" including "rights of the insured to…guaranties." Dkt. 45. Mr. Bowler and Ms. Thompson both had executed personal guaranties for the loans advanced by the Plaintiff. Dkt. 46. Defendant argues that had the claim been tendered on or before February 12, 2007, then Defendant could have sought subrogation from Mr. Bowler or Ms. Thompson, whose net worth was over $30 million dollars at that time. Dkt. 46. Defendant argues that by the time it received tender of the claim in August 2008, Mr. Bowler and Ms. Thompson's business had collapsed. Dkt. 45. On the other hand, Plaintiff asserts that Defendant's subrogation rights are irrelevant because the guarantors' assets were not sufficient to make the Plaintiff whole and satisfy Defendant's claim for subrogation. Dkt. 36. However, issues of fact are present whether Defendant suffered identifiable and material detrimental effect on the ability to defend its interest because of Plaintiff's late tender. For this reason, summary judgment should not be granted on this issue.

Plaintiff also argues that Defendant did not suffer prejudice because it would not have been able to exercise its subrogation rights from Mr. Thompson and Ms. Bowler quickly enough to recover any assets. Dkt. 36. In response, Defendant offered the declaration of Wayne Fong, an attorney in Defendant's subrogation department, who provided Defendant's subrogation procedures. Dkt. 47. Plaintiff argues that Defendant did not disclose Mr. Fong as a witness. Dkt. 52. But in the interests of fully and fairly reaching a decision on the merits, the Court will consider the pleading. Plaintiff contends that Mr. Fong's declaration

contradicts earlier deposition testimony. Dkt. 52. Specifically, Plaintiff argues that Defendant, during the deposition of Claudia Graham, who Defendant designated as its Rule 30(b)(6) deponent, earlier stated that it "did not know" how quickly it would have acted to pursue subrogation and would have had to "put a group together to evaluate our options at that time." Dkt. 26. Although Plaintiff argues that these pleadings contradict each other, these pleadings are merely ambiguous as to what route Defendant would have taken to pursue subrogation. It is proper for a jury to weigh testimony and decide on these ambiguities. For this reason, summary judgment is not proper on this issue.

Plaintiff contends that Defendant would not have been able to exercise its subrogation rights until it "settled and paid a claim under this policy." Dkt. 37-2 at 4. Plaintiff argues that Defendant must "establish the predicate fact that it would have immediately advanced the funds had it been given prompt notice." Dkt. 36. However, Plaintiff misses the point that in order for the Defendant to survive summary judgment Defendant only needs to show facts as in dispute to whether it would have immediately paid the claim in order to trigger its subrogation rights. For these reasons, Plaintiff's partial motion for summary judgment on whether Defendant was prejudiced because it was unable to exercise its subrogation rights should be denied because issues of fact are present.

### E. Defendant's Defense of Equitable Subordination/Replacement Mortgage:

Under the Policies, Defendant has a broad right to appoint counsel and direct the defense of the case. Dkt. 45. Defendant asserts that Plaintiff's counsel failed to assert a defense of equitable subordination or replacement mortgage. Dkt. 45. Plaintiff originally loaned the guarantors $900,000 to purchase the property in November 2004. Dkt. 46. In late 2005, Plaintiff made the development loan for the property in the amount of $2,799,337

which paid off, or replaced, the original loan for $900,000 loan for the purchase of the property. Dkt. 46. Plaintiff was aware that R&H had begun work on the project in October 2005, which is prior to the development loan. Dkt. 45; Dkt. 48.

From these facts, Defendant asserts that it would have put forth a defense in the foreclosure action in which the Plaintiff would have argued that because the senior mortgage (loan for purchase of the property) was replaced with a new mortgage (the development loan), the new mortgage retains the same priority as the senior mortgage. Dkt. 45. Defendant argues that this defense would have put Plaintiff in first priority for $912,000 of the development loan. Dkt. 45. Defendant contends that a reasonable jury could conclude that Defendant suffered an "identifiable and material detrimental effect on its ability to protect its interests," because it was unable to make this defense in the lien claim. Dkt. 45; *citing Mutual of Enumclaw,* 146 Wn.2d at 430. Here, issues of fact remain as to whether the inability to put forth this defense had an identifiable and material detrimental effect on the Defendant; for this reason, summary judgment should not be granted on this issue.

F. Defendant's Defense that Plaintiff Created, Suffered, Assumed or Agreed to its

Losses:

Under the Policies, coverage is excluded for "defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant." Dkt. 37-2 at 3; Dkt. 37-3 at 3.

Defendant contends that Plaintiff "creates" a loss due to the insured's "intentional misconduct, inadvertence, or negligence in bringing the loss." Dkt. 46 *citing Transamerica Title Ins. Co. v. Alaska Federal Sav. And Loan Ass'n of Juneau*, 833 F.2d 775, 776 (9th Cir. 1987) (*citing Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103, 1107-09 n. 8 (8th Cir. 1980).

ORDER Page 14

Defendant argues that Plaintiff "created" or "suffered" a mechanic's lien if the lender fails to disburse available loan funds to pay for work that the mechanic provided prior to the borrower defaulting on the loan. Specifically, Defendant asserts that Plaintiff failed to pay $864,848 to R&H for work it had performed, when Plaintiff still had $147,000 remaining in loan funds to be disbursed. Dkt. 37-5. Defendant contends that, instead, Plaintiff used $40,056.64 of the remaining loan to pay itself an interest payment. Dkt. 48.

Plaintiff argues that "disbursement agreements," which were crucial in the cases cited by Defendant, were not present in the Policies. However, Defendant states that the issue is "whether there was an implied agreement that the lender would advance its loan funds upon submission of proper invoices." Dkt. 45. Defendant contends that Plaintiff agreed to disburse funds to R&H for its billing, up to the maximum contract price. Dkt. 48. Plaintiff contends that it is material that these disbursement agreements must be between the insured and the insurer of the title insurance policy, not the insured and another party, such as a lien claimant. Dkt. 52. It is unclear whether the agreements present here are between the insured and the insurer, or the insured and the lien claimant; for this reason, summary judgment is improper on this issue.

Furthermore, Defendant argues that summary judgment at this stage would be inappropriate, because the Court denied Plaintiff's motion for a protective order on this issue and the Defendant is allowed to conduct additional discovery. Dkt. 45. Specifically, the Court denied Plaintiff's motion for a protective order on for questions on whether Plaintiff created, suffered, or assumed the loss and the Court stated that discovery on this topic is arguably relevant. *See* Dkt. 44. Although Plaintiff argues that "even if [it] negligently disbursed funds, courts have construed the 'created, suffered or incurred' exclusion as *not*

ORDER Page 15

including negligent conduct." Dkt. 52.  While this proposition may have merit, summary judgment is not proper until the parties have fully completed discovery on this issue.  Under Federal Rule of Civil Procedure 56(f), summary judgment is improper on an issue until discovery is concluded. For this reason, the Court should not grant Plaintiff's motion for partial summary judgment on this issue.

G. Plaintiff's Argument that Defendant Offered No Evidence that it Failed to Mitigate its Losses:

Plaintiff contends that Defendant offered no evidence to support its defense that Plaintiff failed to mitigate its losses.  Dkt. 36.  However, Defendant asserts that its arguments supporting that the proposition that it was prejudiced by Plaintiff's late tender, including raising the defense equitable subordination/replacement mortgage and a speedy collection of the personal guarantees of Mr. Thompson and Ms. Bowler, demonstrate Plaintiff's failure to mitigate its losses.  Dkt. 45.  For this reason, issues of fact are present and summary judgment should not be granted on this issue.

Therefore, it is hereby, **ORDERED** that:

• Plaintiff's Motion for Partial Summary Judgment (Dkt. 36) is **DENIED**, and

• The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 12th day of February 2010.

_Robert J Bryan_
_____
ROBERT J. BRYAN
United States District Judge

ORDER Page 16